MUN SEEK PAI, Plaintiff-Appellee, v. FIRST HAWAIIAN BANK, Executor under the Will and of the Estate of Chung Kun Lee, Deceased, Defendant-Appellant

NO. 5756

JANUARY 7, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal filed by First Hawaiian Bank, Executor under the Will and of the Estate of Chung Kun Lee, deceased (executor or defendant), from a judgment of the trial court rendered in favor of Mun Seek Pai (plaintiff or appellee) for the sum of $10,284.75, together with interest of $3,213.91, attorney's fees of $926.46, and costs of $28.00, a total of $14,453.12 for monies due and owing by the deceased to the appellee.

We affirm.

### ISSUES

The appellant has alleged several issues on appeal. However, we believe that consideration of the following issue is dispositive of this appeal:

Did the trial court err in its conclusion of law. 5(a), that the statute of limitations period began to run no earlier than May, 1969?

The plaintiff and his mother, Bok Num Lee, wife of Chung Kun Lee, the deceased, were joint owners of a parcel of real property designated as Lot 7-A. Another parcel of real property, contiguous to Lot 7-A, and designated as Lot 7-B, was jointly owned by Bok Num Lee and the deceased.

On August 30. 1963, both lots were leased as a consolidated parcel through an agreement providing for payment of rental by lessee of $716.00 per month from September 1, 1963, through August 31, 1975.

Mrs. Lee died on March 18, 1964, and as a result plaintiff became sole owner of Lot 7-A. Chung Kun Lee became the sole owner of Lot 7-B. Thus, each became entitled to one-half of the monthly rental of $716.00.

Chung Kun Lee continued to collect all rental, as was the practice among all the above parties, and the plaintiff had no contact with the lessee in reference to any rental payment and had no direct knowledge of any rental payments by the lessee to the deceased. The plaintiff totally relied upon the deceased to collect all rentals and for the deceased to pay plaintiff his rightful share of one-half of the monthly rental payment by the lessee.

Plaintiff did not receive any of his rental share until June of 1965 when he started to receive only half of his monthly one-half share of the rental. Finally, from May, 1969, the plaintiff started receiving his full one-half share of $326.50 per month.

Plaintiff did not pursue the deceased for the delinquent amounts due to him for the reason that the deceased pled personal financial difficulties and requested of plaintiff time until the deceased was "more-or-less financially able to pay" after paying off some other personal debts.

The death of the deceased occurred in March, 1970.

On October 5, 1970, plaintiff duly filed his creditor's claim with the executor. Settlement negotiations between plaintiff and the executor ensued. Plaintiff believed, for some time, that a settlement had been effectuated. However, his

claim was, thereafter, abruptly rejected on December 12, 1972.

Plaintiff then filed his herein complaint in assumpsit on February 9, 1973.

The executor filed a motion for partial summary judgment against the plaintiff contending that any and all of plaintiff's claims of monies due and owing by the deceased on or before February 9, 1967, were barred by the statute of limitations. The plaintiff contended that there were several material facts in genuine issue and a grant of summary judgment is improper. The trial court denied the motion.

Upon conclusion of the proceedings herein, the trial court rendered its findings of fact and conclusions of law.

In its findings of fact, *inter alia*, the court found:

. . . .

4. Although Plaintiff was entitled to receive $326.50 monthly as surviving joint owner of Lot 7-A, from and after March 18, 1964, he received nothing for the remainder of 1964, and for the first five months of 1965, and finally received one payment of $326.50 in June of 1965. From July of 1965, through 1966, 1967, 1968 and through April of 1969, Plaintiff received from decedent one-half of the $326.50 per month which he should have received or the sum of $163.25 per month.

5. The total of the sums collected by decedent on behalf of Plaintiff from October of 1964 through April of 1969 and not transmitted to Plaintiff totals $10,284.75.

6. Plaintiff agreed with Decedent that the latter could defer paying to the former the full amount of lease rentals received by decedent on Plaintiff's behalf, when decedent became financially able to do so, a condition which did not take place until May of 1969, when decedent began to pay to Plaintiff the full rent of $326.50 per month.

7. Prior to October 5, 1970, there was no demand upon decedent for payment of the latter's obligation to Plaintiff. Neither did decedent give any notice or indication to Plaintiff that it did not recognize such obligation.

On October 5, 1970, Plaintiff duly filed a claim against decedent's estate. To December 12, 1972, a settlement of said claim was negotitated between Plaintiff and decedent's executor and when it appeared that settlement had been effected, for unknown reasons, Plaintiff's claim was rejected on said date of December 12, 1972. . . . In its conclusions of law, *inter alia*, the court held:

. . . .

2. The defense of laches and unreasonable delay . . . is denied because of absence of equitable factors.

3. The defense of the statute of limitations set forth in Section 657-12, Hawaii Revised Statutes[1] is inapplicable inasmuch as the cause of action asserted . . . is covered by the six-year statute of limitations, Section 657-1, Hawaii Revised Statutes[2] and . . . is denied.

. . . .

5. The defense that Plaintiff's claim is barred because of the statute of limitations set forth in Section 657-1, Hawaii Revised Statutes, . . . is denied for the following reasons: (a) the limitations period began to run no earlier than May 1969 when decedent became financially able to pay Plaintiff in full; (b) there was no demand or other event (except as set forth in subparagraph (a) of

---

[1] HRS § 657-12 reads:

§657-12 *All other personal actions.* All personal actions of any nature whatsoever not specifically covered by the laws of the State shall be instituted within four years after the cause of action accrued, and not after.
*But see* Act 105, § 1(q), SLH 1972.

[2] HRS § 657-1 (Supp. 1975) reads:

§657-1 *Six years.* The following actions shall be commenced within six years next after the cause of action accrued, and not after:

(1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court;

(2) Actions upon judgments or decrees rendered in any court not of record in the State, or, subject to section 657-9, in any court of record in any foreign jurisdiction;

(3) Actions for taking or detaining any goods or chattels, including actions in the nature of replevin;

(4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.

this paragraph) which established a cause of action in Plaintiff's favor against decedent prior to the filing of Plaintiff's claim against decedent's estate on October 5, 1970; and (c) the statute of limitations was tolled on October 5, 1970, when Plaintiff filed his claims as provided for under Section 531-23 and those claims that were not barred by the statute of limitations on October 5, 1970, were lawful claims as provided for under Section 531-24.

DID THE TRIAL COURT ERR IN ITS CONCLUSION OF LAW, 5(a), THAT THE STATUTE OF LIMITATIONS PERIOD BEGAN TO RUN NO EARLIER THAN MAY, 1969?

In our opinion, wherein the trial court was correct in holding that the six-year statute of limitations was applicable, the trial court's conclusion of law 5(a), if correct, mutes any question relative to the statute of limitations, for the plaintiff filed his herein complaint on February 9, 1973, considerably before the expiration of the six-year limitation.

The court's conclusion, in essence, held that a new conditional promise to pay was made by the decedent.

The record shows the following:

Direct examination of plaintiff:

Q. (By Mr. Fong) Mr. Pai, why did Mr. Lee [deceased] — what reason did he give you for not paying you the amount in full during that period of time?

A. Well, he said that my mother and my stepfather, you know, had business expenses and they had incurred some debts during that time and that since they, you know, they figured that if I could help pay 'em off, until the debt was completed, I said, "Well, that's all right, and you can pay it off at that time," until he is more-or-less financially able to pay me back the full amount.

. . . .

Q. Mr. Pai, did you, at any time, offer to forgive Mr. Lee for the monies that were due you?

A. No.

. . . .

Cross-examination of plaintiff:

. . . .

Q. (By Mr. Leavitt) And starting in — when was it? — May of 1969, Mr. Lee began paying you everything which you believe you deserved on that piece of property; isn't that correct?

A. Yes.

Q. And did he tell you why he was making the payment of $326.50 at that time?

A. Yes. I believe he stated that he had caught up on his debts and he was free to pay now.

. . . .

Redirect examination of plaintiff:

Q. Mr. Pai, you indicated on cross-examination that he started to pay you fully in April, 1969; is that right?

A. That's May.

Q. May, 1969. Prior to then, he indicated that he was withholding a part of the money because of debts; is that not true?

. . . .

A. Yeah, the payment was for the — for the debt that he had incurred, before.

. . . .

Recross-examination of plaintiff:

Q. Now when did he say this to you, sir?

A. I don't recall the exact time; you see, there was a lot of time in between, prior — from 1964 on to prior to his death, there was quite a bit of conversation on this field.

. . . .

The question is whether the facts as set forth above are sufficient to take the case out of the bar of the statute of limitations.

In our opinion, from the facts herein, it can be readily inferred that the decedent made a new promise to pay to the plaintiff all current debts and new debts as they may occur prior to the occurrence of a condition. The new promise to pay all debts due and owing between 1964 and May, 1969, relative to the rental collected by decedent on behalf of plaintiff, was made prior to May, 1969, but subject to a condition. The condition was fulfilled in May, 1969. There was evidence that

when the decedent commenced full payment in May, 1969, he acknowledged that he was doing so in performance of the prior promise and because the condition had been met.

Action to enforce the payment of the indebtedness was filed on February 9. 1973.

We agree with the trial court that the limitations period began to run no earlier than May, 1969, when decedent became financially able to pay plaintiff in full.

In *Maciel v. Kalua*, 24 Haw. 216 (1918), this court stated at 221:

> The effect of a new promise is merely to revive the remedy upon the original obligation or to start the statute anew; in short, to destroy the effect of the statute up to that time. It does not stop the running of the statute, like the institution of a suit, but fixes a new date as the point from which the period of limitation is to be reckoned. [Citations omitted.]

The new promise having the effect of fixing a new date as the point from which the period of limitation is to be reckoned it is apparent that the new promise must be shown to have been made within six years of the commencement of the action otherwise the new promise will itself be barred.

This court has further held that if a promise to pay is conditional, the cause of action on the promise does not accrue until the condition is performed.

In *Segelken v. Hawaiian Trust Co., Ltd.*, 20 Haw. 225, 229, (1910), this court quoted the following from *Wood on Limitations*, 226, 363, with approval:

> [W]hen the payment of a claim or the liability of a party is made dependent upon the performance of any condition precedent or the happening of any contingency, a right of action does not accrue, or the statute begin to run, until the performance of such condition or the happening of such contingency.

*See also Garner v. Garner*, 31 Md. App. 641, 358 A.2d 583 (1976).

Thus, the herein facts and the law applicable make clear that the plaintiff is entitled to the judgment of the trial court.

*James T. Leavitt, Jr. (William S. Hunt* with him on the brief; *Hart, Leavitt* and *Hall* of counsel) for defendant-appellant.

*Robert M. Ehrhorn, Jr. (Okumura* and *Takushi* of counsel) for plaintiff-appellee.